## Case No. 15,200.

### UNITED STATES v. The GEORGE DARBY.

[26 Law Rep. 566.]

District Court, S. D. New York.  June, 1864.

SHIPPING — REGULATIONS — PROCEEDING ON VOYAGE.

A vessel has not proceeded or departed on her voyage, within the provisions of acts of congress of July 13, 1861 [12 Stat. 255], and May 20, 1862 [Id. 404], and the rules and regulations of the secretary of the treasury supplementary thereto, until she is outside the limits of the harbor of her port of departure.

In admiralty.

Mr. Smith, Dist. Atty., and Mr. Lowrey, for the United States.

Webster & Craig, for the vessel.

BETTS, District Judge. The collector of the port, on Sept. 26, 1863, seized the above vessel and cargo, anchored in the harbor, having commenced to depart from this port, destined on a voyage to Beaufort, N. C. The next day a libel of information was filed against the vessel and cargo in the cause, demanding the forfeiture of the vessel and cargo, and their condemnation to the use of the United States, because of the violation of the acts of congress of July 13, 1861, and May 20, 1862 (12 Stat. 257 and 404), and the proclamations of the president of Aug. 16, 1861 [Id. 1262], and May 12, 1862 [Id. 1263], and the rules and regulations of the secretary of the treasury of May 12, 16, and 23, and of Aug. 28, 1862. The Atlantic Navigation Company, a corporation established by the laws of the state of New York, intervened by their secretary and filed their answer and claim to the suit against the vessel, Oct. 1, 1862, claiming to be her true and bona fide owners, and taking an issue of general denial to all the charges inculpating the vessel in the matters alleged against her, the owners of the vessel not being owners of or claiming any interest in the cargo. Various parties. asserting interests in the property and merchandise laden on board, also intervened and filed claims and answers in full defence of the action implicating the cargo seized with the vessel.

The various issues were brought before the court for hearing in the December term of 1863, and were proceeded with for the prosecution and defence during five successive days, fully occupied in giving parol and documentary evidence, and in submitting oral arguments thereon, the counsel for the respective parties reserving the privilege also of supplying further explanations and discussions upon the entire controversy by written briefs and arguments. The last of these papers were delivered to the court during the March and April terms of the present year. On the final submission of the case, however, it was agreed between the parties that the decision of the court should be limited to the issue with the vessel alone, without affecting the claimants of the cargo or of the government in that branch of the suit affecting the cargo, the counsel for those claimants withdrawing themselves, with the consent of the United States attorney, from taking part in the issue in respect to the culpability of the vessel.

There seems to be no ground of controversy upon the proofs that the claimants of the vessel were, at the time the voyage was undertaken, bona fide owners of the vessel; that the port of Beaufort, in the state of North Carolina, though territorially within the enemy's country, was, under the statutes and regulations, in force in this, respect, open and free to the lawful commerce of the United States in vessels duly cleared and licensed in the United States; that this vessel had been in proper form cleared and licensed at the custom-house at this port for the voyage intended to be made at the time hence to that port, and that the cargo discovered upon the vessel, and alleged to be contraband of war and unlawfully placed there, was laden on board without the actual knowledge of or notice to the claimants or their agents of any illegal or irregular act on the part of the vessel in respect thereto, other than what the clearance and permit granted the vessel at the custom-house at this port, previous to her effort to leave the port on her intended voyage, may have imported in contemplation of law. The gravamen of the charges against the vessel was, first, that she was carrying as part of her lading articles contraband of war; and secondly, that she was proceeding from this port to Beaufort, in violation of the provisions of the statute before referred to, as supplemented by the regulations of the treasury department, which are co-operating with the said statutes as an entire enactment.

The gist of the defence, except in the particular of fact, that the voyage complained of had not actually been entered upon and commenced when the vessel and cargo were seized, rests upon the proposition of law set up by the claimants, that the acts alleged to have been committed by the vessel were not unlawful, within any provision of the existing law. A succinct and connected statement of the terms of the acts of July 13, 1861, and May 12, 1862, together with the regulations appointed by the secretary of the treasury, will exhibit a satisfactory exposition of the purport of the enactments governing the subject in question. The act of July 13, 1861 (section 5), enacts that all commercial intercourse by and between the

inhabitants of any state in a state of insurrection and those of the rest of the United States, shall cease and be unlawful so long as such condition of hostility shall continue, and all goods and merchandise coming from said states into the others by land or water, and all proceeding to the same, together with the vessel or vehicle conveying the same, shall be forfeited to the United States. The act of May 20, 1862, authorizes regulations to be adopted by the secretary of the treasury with respect to the transportation of goods from any foreign or domestic port for the use of the insurgents, those regulations having the same sanction and force as statutory enactments. The rules and regulations prescribed by the secretary of the treasury, admitted by the counsel for the claimants on the trial to be legally authenticated, were issued by the department in May and August, 1862, and are made in the libel of information substantive grounds of charge against the vessel in this suit. The true import of the act of May 20, 1862, is to empower the secretary of the treasury to apply by his regulations conditions to the trade to be after permitted with insurrectionary ports, of the same efficiency as if imposed by direct legislation of congress. And accordingly, violations of the rules restrictive of such trade are subject to like penalties as if the regulation was one of direct and positive legislation. But the overt acts, made criminal by the acts of congress referred to in the libel of information in the cause, are those of actual trading or intercourse with the ports or citizens and inhabitants of insurrectionary places, or the proceeding or departure of vessels to carry into effect such intercourse or trading. The libel nowhere alleges that the purpose and intention to carry on commercial intercourse at Beaufort, or with the rebels, or to supply them with articles contraband of war, in the contemplated voyage, subject the vessel to condemnation and forfeiture. The libel does not aver the purpose and intention per se of the owners of the vessel to prosecute an unlawful commercial intercourse with the enemy, or supply them with articles contraband of war, were a criminal offence, subjecting the vessel to forfeiture. The allegations are, that the ship is now at the port of New York, and was there seized as forfeited to the United States, "for proceeding to a state declared to be in insurrection against the United States, in violation of the acts of congress and regulations of the secretary of the treasury," &c. If the preparation of the vessel for the voyage she purposed performing was in violation of the regulations of the secretary of the treasury, or the provisions of the act of congress, it is not made by the libel the gravamen of the offence alleged to have been committed by her. The libel charges that "the said George Darby and cargo are forfeited to the United States for proceeding to a state,"

&c. The vessel was seized and detained in the harbor immediately after leaving her dock, and in the open body of the harbor. The blow was struck when the criminal act was under premeditation and fully resolved upon, perhaps, mentally by the accused party, so that the guilty deed was morally accomplished: but it yet lacked that physical perpetration necessary to constitute the derelictum which only is cognizable by civil law. The government detectives, who sedulously supervised in secret the outfitting of the vessel in this port, and watched every step in her preparation, were obviously cautioned that she could not be interfered with whilst moored in the harbor, and waited until she cast off from her dock to arrest her in the act of violating the law "in proceeding" from this port to Beaufort. The arrest of the vessel was virtually concomitant with her casting off from her moorings, as the seizing officers went immediately on board her, and she was brought to anchor immediately by their orders, and prevented from departing from this port or "proceeding" upon such undertaking.

The propositions of fact insisted on by the libellants are, in substance, that the liquors taken on board the vessel were contraband of war, and that permits and licenses therefor were fraudulently and evasively obtained at the custom-house, so as to make the clearances and permits therefor legally void; and that the vessel was seized proceeding on a voyage from this port to Beaufort, with a view to commercial intercourse there, in violation of the act of congress referred to, she not having obtained a lawful permit therefor.

The claimants contest these positions of fact and law, denying that the vessel, when arrested, was proceeding on the voyage alleged, or that she was lawfully seizable in this port on the allegations contained in the libel; that the cordial laden on board her was contraband of war, or that the ship was responsible for the liquor admitted on board under the permit of the custom-house, and insisting that neither the law nor the regulations of the treasury department make the vessel responsible for the liquors found on board of her.

I think the decision of the supreme court in the case of The Active, 7 Cranch [11 U. S.] 100, establishes the principle that the action of the schooner in this case, at anchor or in motion within the harbor, under way, with a view of pursuing a voyage to Beaufort, was not a proceeding or departure within the interdiction of the law, and does not authorize her arrest in this case. The vessel was not, in judgment of law, proceeding to the port of Beaufort in violation of law, until she had gone out of the port of New York. There had accordingly no right of action accrued in the case when the vessel was attached by warrant, and the libel must be dismissed.